IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CALVIN TALLY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil No. 12-cv-291-CJP |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant.[1] | ) |

**MEMORANDUM and ORDER**

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff Calvin Tally is before the Court, represented by counsel, seeking review of the final decision of the Commissioner of Social Security denying him Supplemental Security Income (SSI).[2]

**Procedural History**

Mr. Tally applied for benefits in December, 2008, alleging disability beginning on March 28, 1999. (Tr. 141). The application was denied initially and on reconsideration. After holding a hearing, ALJ George Gaffaney denied the application for benefits in a decision dated November

---

[1] Carolyn W. Colvin was named Acting Commissioner of Social Security on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin is automatically substituted as defendant herein. No further action is necessary to continue this action by reason of the last sentence of 42 U.S.C. §405(g). ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.")

[2] This case was referred to the undersigned for final disposition upon consent of the parties, pursuant to 28 U.S.C. §636(c). See, Doc. 14.

23, 2010.  (Tr. 24-30).   Plaintiff's request for review was denied by the Appeals Council, and the decision of the ALJ became the final agency decision.  (Tr. 1).

Administrative remedies have been exhausted and a timely complaint was filed in this Court.

### Issues Raised by Plaintiff

Plaintiff raises the following issues:

1. The ALJ did not properly consider whether plaintiff met Listing 1.04A, Disorders of the Spine.

2. The ALJ failed to develop the record by obtaining the records from plaintiff's prior social security claim.

3. The ALJ failed to obtain a second consultative examination by a specialist.

### Applicable Legal Standards

To qualify for SSI, a claimant must be disabled within the meaning of the applicable statutes.[3]  For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  **42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).**

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable

---

[3] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404.  The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416.  For all intents and purposes relevant to this case, the DIB and SSI statutes are identical.  Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations.  Most citations herein are to the DIB regulations out of convenience.

clinical and laboratory diagnostic techniques.  **42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(C).**  However, limitations arising from alcoholism or drug use are excluded from consideration of whether a claimant is disabled.  **42 U.S.C. §423(d)(2)(C); 20 C.F.R. §404.1535.**

"Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit.  **20 C.F.R. §§ 404.1572**.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled.   The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, **649 F.3d 565, 568-569 (7th Cir. 2011).**

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience.  *Schroeter v. Sullivan*, **977 F.2d 391, 393 (7th Cir. 1992); see also, 20 C.F.R. §§ 404.1520(b-f).**

This Court reviews the Commissioner's decision to ensure that the decision is supported by

substantial evidence and that no mistakes of law were made.   The scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." **42 U.S.C. § 405(g)**.   Thus, this Court must determine not whether Mr. Tally was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made.   **See, Books v. Chater, 91 F.3d 972, 977-78 (7th Cir. 1996)** (citing *Diaz v. Chater*, **55 F.3d 300, 306 (7th Cir. 1995)**).

This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."   *Richardson v. Perales*, **402 U.S. 389, 401 (1971).**

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ.   *Brewer v. Chater*, **103 F.3d 1384, 1390 (7th Cir. 1997)**.   However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner.   See, *Parker v. Astrue*, **597 F.3d 920, 921 (7th Cir. 2010),** and cases cited therein.

### The Decision of the ALJ

ALJ Gaffaney followed the five-step analytical framework described above.  He determined that Mr. Tally had not been engaged in substantial gainful activity since the alleged onset date, and that he had the severe impairment of L1 and L2 fractures, status post surgery in 1999.   He determined that plaintiff's impairments do not meet or equal a listed impairment.   He specifically considered Listing 1.04 in making that determination.

The ALJ found that Mr. Tally had the residual functional capacity to perform a limited range of work at the sedentary exertional level.   Plaintiff had no past relevant work.   Based on

evidence from a vocational expert, the ALJ found that plaintiff he could do jobs which exist in the national economy, such as audit clerk, addresser and office clerk.

### The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff.

**1.   Agency Forms**

Mr. Tally amended his alleged onset date to October 1, 2008. (Tr. 163). He was born in 1973 and was 35 years old on the amended date. (Tr. 164).

A prior application for disability benefits had been granted in 1999. (Tr. 165). His benefits were terminated in 2005 because he was sentenced to prison on a reckless homicide conviction. (Tr. 152). The documents related to the 1999 application were no longer in the system by the time plaintiff filed his application in 2008. (Tr. 150).

In a Disability Report, plaintiff said he was unable to work because of nerve damage to his spine resulting from gunshot wounds. (Tr. 169). He had last worked in 1998 as a stocker, delivering items to stores at an airport. (Tr. 170). He obtained a GED in 2006. (Tr. 174).

Plaintiff said that he had spinal impairments and muscle spasms which limited him to sitting and standing for only 15 minutes at a time. He had to take frequent bathroom breaks and had to lie down during the day. (Tr. 193).

**2.   Evidentiary Hearing**

Plaintiff was represented by an attorney at the hearing on October 22, 2010. (Tr. 48).

Mr. Tally testified that he had permanent nerve damage. He had to learn to walk again in late 1999. He said that he always used a cane, even when walking inside. (Tr. 50).

Plaintiff explained that his social security disability benefits were terminated in 2005

because of a reckless (vehicular) homicide conviction.  He entered prison in Illinois on that conviction in June, 2005.  (Tr. 49).  In March, 2006, he was released from the Illinois Department of Corrections and was admitted to the Missouri Department of Corrections because the reckless homicide violated his Missouri probation on drug and firearms convictions.  He was released from prison in October, 2008.  (Tr. 55-57).

Mr. Tally testified that he lived with his father and stepmother.  (Tr. 55).  He said he was unable to work because he could not stand or sit for more than 15 or 20 minutes.  He said he had muscle spasms every 15 or 20 minutes.  He had frequent bladder infections and had to wear diapers.  (Tr. 57-59).

He took on blood pressure medication. At the time of the hearing, he was getting over a bladder infection for which he was taking antibiotics and Tylenol #3.  (Tr. 60).  Mr. Tally testified that he had physical therapy in the past, and had surgery on his spinal cord.  "They" suggested acupuncture, but said it would not correct the spinal injury.  (Tr. 61-62).  He said that he had sharp, throbbing pain from his knee to his foot every 15 to 20 minutes.  He was not receiving any treatment for his pain, and was not taking any pain medication for his back or leg pain. (Tr. 52).

A vocational expert (VE) also testified.  The ALJ asked him to assume a person who was able to lift 10 pounds occasionally and 5 pounds frequently; stand/walk for 2 out of 8 hours; walk for a block at a time; sit for 6 out of 8 hours with a sit/stand option every 30 minutes; with no climbing ladders, crouching, kneeling or crawling; occasional climbing stairs, stooping and balancing; no hazards such as heights or moving machinery; and use of a cane to ambulate.  The VE responded that he would be able to do jobs which exist in significant numbers in the regional and national economy.  (Tr. 65-68).

**3.    Medical Records**

The earliest medical record is a report of a consultative examination performed by Dr. Raymond Leung on March 2, 2009.  (Tr. 205-210).   No medical records were available for Dr. Leung's review.   Mr. Tally gave a history of gunshot wounds to his back, right upper leg and left calf in March, 1999.   He said he had surgery in which three feet of his intestines were removed. He said that he did not use a cane or walker, and was not taking any pain medications.   On exam, he walked with a mild limp.   He was able to walk 50 feet unassisted.   He was able to tandem walk, hop, heel walk and toe walk.   He could squat one-half of the way down.   His back had full range of motion except he could only extend (lean backwards) 5 degrees.   The range of motion of his knees was limited by 10 degrees.   Straight leg raising was limited to 30 degrees on the right and 50 degrees on the left.   He had no muscle atrophy or muscle spasm.   Pinch strength, grip strength, arm strength and leg strength were full throughout.   He had no difficulties getting on and off the table.   On neurologic exam, sensation was within normal limits.

On May 7, 2009, the agency denied plaintiff's application on reconsideration.   (Tr. 87).

On June 26, 2009, Mr. Tally was seen by Dr. Phuong Nguyen of SSM Rehab in St. Louis, Missouri. (Tr. 226-227).   The chief complaint was "evaluation to fill out forms for disability and for application for Medicare."   Dr. Nguyen noted that plaintiff was a former patient of SSM Rehab.   He had been treated there in 1999 for gunshot wounds to the chest and abdomen which resulted in a spinal cord injury and paraparesis. He was treated as an inpatient for about a month in 1999, and recovered with "fair mobility functions," but his right leg remained "significantly impaired with weakness and muscle atrophy."   He had a neurogenic bladder disorder for which he wore Depends, but he thought he could empty his bladder and bowel.   He was independent with self-care.   Dr. Nguyen noted that he suffered an injury to his left heel in an accident in December, 2004, and was put in a cast.   He did not have a primary care physician and had not been seen at

7

SSM Rehab since 1999.  On exam, his upper body was muscular and he was "in good shape for his age."  His right lower extremity was atrophied from the thigh to the foot; it was about one-half the size of the left leg.  He had moderate contracture of the hips and minimal contracture of the right knee and ankle, and bony hypertrophy and contracture of the left ankle.

Dr. Nguyen filled out a Medical Source Statement in which he opined that Mr. Tally could lift only 5 pounds, sit for 20 minutes at a time and for 3 out of 8 hours total.  He could stand for 5 minutes at a time and for 2 out of 8 hours total.  (Tr. 240-242).

Plaintiff's next medical treatment was in June, 2010.  He was seen by Dr. Bernard at Southern Illinois Healthcare Foundation on June 14, 2010, for a check-up and to establish care.  He gave a history of being shot in 1999 and having spinal cord surgery.  He went to prison in 2005 and lost his social security benefits.  Dr. Bernard noted that he had right leg weakness, a shuffling gait, and "continuous muscle spasm."  The diagnoses were hypertension, spinal cord injury at L4-L5, gait difficulty ("using cane"), muscle spasm and several tiny pressure sores.  Dr. Bernard ordered lab work.  (Tr. 231-232).

Plaintiff returned for the results of his lab work on June 28, 2010.  He had a urinary tract infection, for which Dr. Bernard prescribed antibiotics.  The doctor noted that his neurological exam was normal, as were his extremities.  Dr. Bernard referred him to the Spinal Cord Clinic.  (Tr. 230).  There is no indication that plaintiff was ever seen at the Spinal Cord Clinic.

On August 11, 2010, plaintiff saw Dr. Bernard to get "disability forms filled out."  Dr. Bernard noted that he had a spinal cord injury, a shuffling gait and hypertension.  He prescribed Lisinopril, a blood pressure medication.  (Tr. 228).

The form filled out by Dr. Bernard on August 11, 2010, is at Tr. 245-247.  Dr. Bernard opined that plaintiff could not lift or carry more than 5 pounds, could sit and stand for only 10 to 15 minutes at a time, and should elevate his feet while sitting.  He could never do any postural

8

activities. These restrictions were based on weakness and muscle spasms in the legs. (Tr. 245-247).

## Analysis

Plaintiff's first argument is that the ALJ failed to properly consider whether he met the requirements of Listing 1.04A.

A finding that a claimant's condition meets or equals a listed impairment is a finding that the claimant is presumptively disabled. In order to be found presumptively disabled, the claimant must meet *all* of the criteria in the listing; an impairment "cannot meet the criteria of a listing based only on a diagnosis." 20 C.F.R. §404.1525(d). The claimant bears the burden of proving that he meets or equals a listed impairment. **Maggard v. Apfel, 167 F.3d 376, 380 (7th Cir. 1999).**

The requirements of Listing 1.04A are:

Disorders of the spine (e.g., herniated nucleus pulposus, ... degenerative disc disease ...vertebral fracture) resulting in compromise of a nerve root ... or the spinal cord.
With
A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

In discussing whether plaintiff met the requirements of Listing 1.04A, the ALJ failed to note that he had vertebral fractures. However, that omission does not require remand. It would have been better if the ALJ had set out a more complete discussion of Listing 1.04A. However, since the evidence of record does not establish that plaintiff meets the requirements of Listing 1.04A, as he argues, remand is not warranted. "[A]dministrative error may be harmless: we will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result." **McKinzey v. Astrue, 641 F.3d 884, 892 (7th Cir. 2011)**.

The evidence falls far short of establishing that plaintiff met all of the requirements of Listing 1.04A. He points to no evidence that he had a neuro-anatomic distribution of pain.

Further, 1.04A specifically requires evidence of positive straight-leg raising test in *both* the sitting and supine positions. Plaintiff argues that Dr. Leung found bilateral positive straight leg raising, but there is no indication that positive results were found in both the sitting and supine positions. Neither Dr. Nguyen nor Dr. Bernard reported positive straight leg raising at all. Therefore, remand is not warranted to consider whether plaintiff met Listing 1.04A.

Plaintiff's other two points concern evidence that was not part of the record. Notably, plaintiff does not take issue with the ALJ's weighing of the medical evidence that was before him. Rather, his argument is based on speculation that some other evidence, not obtained by the ALJ, would show that he was disabled. Such speculation is not a sufficient basis for remand. **Binion v. Shalala, 13 F.3d 243, 246 (7th Cir. 1994).**

At the evidentiary hearing, the ALJ asked plaintiff's counsel whether he had any objections to the record and gave him the opportunity to submit additional evidence. Counsel did not ask the ALJ to obtain plaintiff's medical records from 1999 or to obtain a second consultative examination. See, Tr. 50-53. "When an applicant for social security benefits is represented by counsel the administrative law judge is entitled to assume that the applicant is making his strongest case for benefits." **Glenn v. Secretary of Health and Human Services, 814 F.2d 387, 391 (7th Cir. 1987).**

There was no reason for the ALJ to have gotten the records from 1999. Those records would have little or no relevance to the issue before the ALJ, *i.e.*, whether plaintiff was disabled from October 1, 2008, through the date of the decision.

Plaintiff's argument that the ALJ should have ordered a second consultative exam by a specialist is premised on the ALJ's observation that there were no "treatment notes from specialists." See, Tr. 28. This remark was made in the context of the ALJ's discussion of the fact that the record reveals that plaintiff received very little medical treatment and his few visits to

doctors were mostly for the purpose of getting disability forms filled out. The ALJ observed, reasonably enough, that a person who had constant and severe pain accompanied by muscle spasms would seek treatment and be prescribed pain medication. However the record revealed that Mr. Tally was not prescribed pain medication at all during the years in question. Thus, the ALJ reasonably concluded that record did not support Mr. Tally's allegations. Contrary to plaintiff's argument, the ALJ's remark was not an acknowledgement that an examination by a specialist was warranted.

Courts generally defer to the ALJ's decision about whether to order a consultative examination. Noting that the clamant has the "primary responsibility for producing medical evidence demonstrating the severity of impairments," the Seventh Circuit has recognized that, "because it is always possible to identify one more test or examination an ALJ might have sought, the ALJ's reasoned judgment of how much evidence to gather should generally be respected." ***Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004).** Here, the ALJ did order one consultative examination; plaintiff presents no reasonable basis for his suggestion that the failure to order a second examination by a specialist was error, especially in view of his failure to request such an examination.

Lastly, although not presented as a separate point, plaintiff argues that the ALJ erred in discounting his credibility on the basis that he failed to seek medical treatment without considering the reason for the lack of treatment. However, the ALJ's credibility analysis was based on several factors other than lack of treatment. Not all of the ALJ's reasons have to be sound as long as enough of them are. ***Halsell v. Astrue*, 357 Fed. Appx. 717, 722-723 (7th Cir. 2009).** Plaintiff does not take issue with his other reasons. As the ALJ's credibility determination was not "patently wrong," it is entitled to deference and will not be overturned. ***Elder v. Astrue*, 529 F.3d 408, 413-414 (7th Cir. 2008).**

11

**Conclusion**

The Commissioner's final decision denying Calvin Tally's application for social security disability benefits is **AFFIRMED.**

The Clerk of Court is directed to enter judgment in favor of defendant.

**IT IS SO ORDERED.**

**DATED:   February 22, 2013.**

>            s/ Clifford J. Proud
>            **CLIFFORD J. PROUD**
>            **UNITED STATES MAGISTRATE JUDGE**